UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JASON TOWNS, GARLAND ELEBY, LETITIA )
JACKSON, KAREN LANFORD, TAMIA NUNN, )
REGINALD SCOGGINS, CHRISTOPHER )
TRASS, DARRYL WOODS, ERICKA GARMON, )
SHAWNDA SIMMONS, and LATICIA DANIEL, ) Case No. 23-cv-16316
individually and on behalf of all others similarly )
situated, ) Judge Sharon Johnson Coleman
 )
    Plaintiffs, )
 )
  v. )
 )
PEOPLES GAS LIGHT & COKE CO. and WEC )
ENERGY GROUP, )
 )
    Defendants. )

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Jason Towns, Garland Eleby, Letitia Jackson, Karen Lanford, Tamia Nunn,

Reginald Scoggins, Christopher Trass, Darryl Woods, Ericka Garmon, Shawnda Simmons, and

Laticia Daniel (together, "Plaintiffs") are all current or former employees of defendant Peoples Gas

Light & Coke Co. ("Peoples Gas"), which is a wholly owned subsidiary of defendant WEC Energy

Group ("WEC") (together, "Defendants"). Plaintiffs, who are all African American,[1] bring a ten-

count complaint on behalf of a proposed class of African American Peoples Gas employees alleging

race and disability discrimination, retaliation, interference with federal employment rights, and

violations of various state statutes and common law duties.

Defendants move to dismiss part of that complaint, including: all Plaintiffs' claims of

discrimination in violation of 42 U.S.C. § 1981 (Count I); all Plaintiffs' claims of discrimination in

violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-1, *et seq.*

---

[1] Plaintiffs' complaint alternates between using "African American" and "Black" to describe Plaintiffs' race.
The Court uses "African American" except when directly quoting a party or case.

(Count II); Woods's claim of discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (Count IV); all Plaintiffs' claims of discrimination in violation of the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101, *et seq.* (Count VII); and all Plaintiffs' claims of intentional infliction of emotional distress ("IIED") (Count X). WEC moves separately to dismiss all claims against it for failure to state a claim. For the following reasons, the Court grants in part and denies in part Defendants' Joint Partial Motion to Dismiss [18] and grants WEC's Motion to Dismiss [19].

**BACKGROUND**

The following facts are accepted as true for the purposes of resolving Defendants' motions to dismiss. The Court recounts only the facts from the complaint that are relevant to the Defendants' pending motions.

Peoples Gas is a public utility company that provides natural gas service to over 800,000 people in and around Chicago, Illinois. WEC is the parent company of Peoples Gas, and it allegedly oversees and supports Peoples Gas, including by formulating corporate HR policies. Plaintiffs are all either current or former employees of Peoples Gas in Chicago. Plaintiffs Eleby, Lanford, Scoggins, Trass, Woods, Garmon, and Simmons are all African American and all presently work for Peoples Gas. All other plaintiffs, who are also African American, were allegedly constructively discharged or unlawfully terminated—Jackson in 2022, Nunn in 2022, and Daniel in 2023. Plaintiff Towns, who is also African American, was allegedly unlawfully terminated in 2022, but returned to Peoples Gas in 2023.

Plaintiffs allege that Peoples Gas has "actively cultivated a racially hostile work environment" and that it is "engaged in a pattern and practice of systemic race discrimination

2

and intentionally employs policies and practices that have a disparate impact on Black workers." Plaintiffs allege that they were each affected by Peoples Gas's allegedly discriminatory practices relating to promotion, job assignments, overtime, and discipline.

Although they do not identify specific speakers, Plaintiffs allege that various Peoples Gas supervisors use racist slurs, including the n-word, to describe their African American colleagues and employees. Plaintiffs also allege that Peoples Gas leaders "state that they need to 'crack the slave whip,' or words to that effect." Along with these racial slurs, Plaintiffs allege that Peoples Gas employees and supervisors engage in racist stereotyping against African American employees and customers, and that these stereotypes result in the African American employees and customers receiving worse treatment.

Plaintiffs allege that Peoples Gas's job assignment process illustrates one form of this differential treatment. Peoples Gas allegedly "steers African Americans to more dangerous locations and assignments but denies them adequate security to keep them safe on the job, resulting in assault and robbery of African American employees, often at gunpoint." Plaintiffs allege that these disparate assignments are explained by Peoples Gas as "segregating its workforce by race" and "assign[ing] its African American Utility Workers, because of their race, to work in more dangerous neighborhoods more frequently than it does non-Black employees." To further illustrate this disparity, Plaintiffs allege that twenty-one out of the twenty-two (95%) Peoples Gas employees who were assaulted at gunpoint on job assignments in the last several years were African American.

According to Plaintiffs, "Peoples Gas disproportionately assigns African American employees to work in more dangerous neighborhoods" because of its management's "racially biased views where African Americans belong to a more dangerous sector of society." Each individual Plaintiff alleges that he or she was assigned to a high-crime neighborhood through these practices

because of his or her race, except for Garmon, Simmons, and Daniel who do not allege that they were deployed to do field work.

Plaintiffs also allege that Peoples Gas maintains uniform practices that operate to deny African American employees advancement opportunities. For instance, Plaintiffs allege that Peoples Gas:

- "gives non-Black employees study materials far in advance" of difficult promotion exams, but "routinely springs these exams on African American employees, forcing them to take the exams with little or no preparation";

- hires no African American supervisors in its South Shop so that "occupational segregation concentrates power in the hands of disproportionately non-Black supervisors";

- distributes overtime disproportionately by race because supervisors believe "Black people don't want to work," and assigns African American employees only "backbreaking work, while the easier, less physical labor is reserved for non-Black workers";

- targets African American employees for unequal discipline, including by scrutinizing their time clock entries while allowing employees of other races "free reign to clock out early without fear of discipline."

Each Plaintiff alleges that he or she was subjected to the practices described above. Moreover, there is no dispute at this juncture that Plaintiffs exhausted their Title VII administrative remedies for their race discrimination claims before bringing the claims at issue here. Plaintiff Woods, however, does not allege whether he exhausted his remedies under the IHRA with the Illinois Human Rights Commission before filing this lawsuit.

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926

F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**DISCUSSION**

Plaintiffs' ten-count complaint is complex. Defendants therefore understandably seek to simplify the claims before discovery begins. To do so, Defendants divide Plaintiffs' discrimination claims into eight subcategories of various combinations of people and theories.[2] But that asks too much of Plaintiffs at this point in the case, and it mischaracterizes their allegations. As Plaintiffs point out, they do not assert standalone "racial steering," "denial of overtime," or "denial or advancement" claims—they assert "only claims for disparate treatment under § 1981, [the IHRA,] and Title VII." (Dkt. 29 at 7.)

Each Plaintiff will ultimately have to prove that he or she was individually injured. But at this stage, the bar is relatively low. Plaintiffs do not need to plead a prima facie case or "allege facts aligning with [their] claim's every element." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022). Rather, they "need only allege enough facts to allow for a *plausible* inference that the adverse action suffered was connected to [their] protected characteristics." *Id.* (citing *Graham v. Bd. of Educ.*,

---

[2] Specifically, Defendants categorize the purportedly deficient discrimination allegations as follows: "(a) All of the race discrimination claims under Counts I, II and VII alleging racial steering [fail] to state a claim; (b) Alternatively, the racial steering claims of Plaintiffs Eleby, Nunn and Towns in Count I [are] time-barred; (c) All of Plaintiffs' non-racial steering disparate impact claims asserted under Title VII and the IHRA in Counts II and VII [fail] to state a claim; (d) The following individual discrimination claims in Counts I, II, and VII [fail to state a claim]: (i) the 'denial of overtime' claims of Towns, Eleby, Jackson, Lanford, Nunn, Scoggins, Trass, Woods, Garmon, Simmons and Daniel; (ii) Jackson's claim of being "passed over for promotion or reassignment;" (iii) Nunn's and Scoggins's claims for discrimination in 'discipline;' and (iv) Woods's claim of being denied 'advancement and promotional opportunities;' (e) The discrimination claims by Woods in Counts II, IV and VII arising more than 300 days before he filed his EEOC charge as time-barred." (Dkt. 20 at 24–25.)

8 F.4th 625, 627 (7th Cir. 2021); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)). And although courts and parties have an interest in narrowing the legal issues as the case progresses, the Seventh Circuit has expressed its "strong commitment to the idea that a plaintiff need not plead legal theories in her complaint." *King v. Kramer*, 763 F.3d 635, 642 (7th Cir. 2014) (citing *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) (collecting cases)). Thus, in cases like this one, "[w]here a complaint will survive based on some legal theory, there is no occasion to preclude the [plaintiff] from pursuing alternative theories as well, even if the allegations of the complaint would not appear to support recovery under those alternative theories." *Glenn v. Bd. of Educ. of Barrington 220 Cmty. Unit Sch. Dist.*, No. 17-CV-02974, 2018 WL 5298529, at *4 (N.D. Ill. Oct. 25, 2018) (Tharp, J.).

The Court explains below why Plaintiffs' so-called "racial steering" claim survives Defendants' motion to dismiss, and why their general disparate treatment claims are sufficient at this stage. For the reasons above, the Court does not address every specific subcategory of argument as outlined by Defendants. The Court does, however, separately address Plaintiffs' disparate impact claims and Defendants' arguments that some of Plaintiffs' claims are time-barred.

### 1. Counts I, II, and VII – Disparate Treatment

Counts I, II, and VII of Plaintiffs' complaint allege disparate treatment of African American employees in violation of Title VII, the IHRA, and § 1981. Title VII prohibits employers from discriminating against employees on the basis of race. 42 U.S.C. § 2000e-2(a). The IHRA likewise prohibits employment discrimination, and Illinois courts apply the same Title VII analytical framework to IHRA claims. *Zaderaka v. Illinois Hum. Rts. Comm'n*, 131 Ill. 2d 172, 178, 545 N.E.2d 684, 687 (1989). And under 42 U.S.C. § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right … to the full and equal benefit of all laws … as is enjoyed by white citizens." 42 U.S.C. § 1981. Courts analyze § 1981 claims under the same Title VII and IHRA

framework, *Equal Emp. Opportunity Comm'n v. DHL Express (USA), Inc.*, 577 F. Supp. 3d 754, 797 (N.D. Ill. 2021) (Lee, J.), except that Plaintiffs "bear[ ] the burden of showing that race was a but-for cause of [their] injury." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 333, 140 S. Ct. 1009, 1014, 206 L. Ed. 2d 356 (2020).

To succeed on their discrimination claims, Plaintiffs must demonstrate "(1) that [they are] member[s] of a protected class, (2) that [they] suffered an adverse employment action, and (3) causation." *Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022) (citing *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018)). At the pleading stage, however, Plaintiffs "need only aver that the employer instituted a (specified) adverse employment action against [them] on the basis of [their protected characteristic]." *Tamayo*, 526 F.3d at 1084. This less mechanical formulation accounts for the fact that "[e]mployers are familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice of these claims." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (citation omitted).

Defendants challenge Plaintiffs' discrimination claims as (1) failing to allege intent, (2) failing to allege causation, and (3) being conclusory. The Court will address each argument in turn.

### a. Intent

To sufficiently state a discrimination claim, Plaintiffs need only "allege [Defendants'] intent quite generally." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781 (7th Cir. 2007) (citations omitted). Discriminatory intent can be inferred "from suspicious words or actions." *Hossack v. Floor Covering Assocs. of Joliet, Inc.*, 492 F.3d 853, 862 (7th Cir. 2007). But before the Court can address whether Plaintiffs adequately allege intent, it must address a threshold disagreement between the parties.

Defendants frame the intent at issue here as Peoples Gas's intent to cause Plaintiffs to be victims of crimes in the field. Specifically, Defendants argue that Plaintiffs "plead no facts even

suggesting that Peoples Gas acted with discriminatory intent to … subject[ ] its Black employees to violent incidents in the field." (Dkt. 20 at 7–8.) Plaintiffs frame the relevant intent differently, arguing that the relevant intent is Peoples Gas's intent to assign Plaintiffs to worse working conditions, regardless of the outcome of those assignments. The Court agrees with Plaintiffs.

Defendants mistake the alleged adverse action in this case, and thus the relevant intent. Plaintiffs do not allege that Peoples Gas intended for them to be victims of crime. Instead, their complaint makes clear that Plaintiffs allege Peoples Gas discriminated against them by assigning African American employees to worse working conditions (service locations with higher crime rates), while assigning employees of other races to better working conditions (service locations with lower crime rates). The negative consequences that followed from those assignments—Plaintiffs falling victim to crimes—were incidental to the discriminatory assignments.

Plaintiffs rely on *DHL Express*, 577 F. Supp. 3d at 801, to support their framing of the issues. In *DHL Express*, the Equal Employment Opportunity Commission ("EEOC") sued a delivery company on behalf of a group of African American truck drivers alleging race discrimination based on the routes the company assigned to them. *Id.* at 759. Among other things, the EEOC contended that the company disproportionately assigned African American drivers to higher-crime areas. *Id.* at 798–99. The Court addressed evidence that showed working in higher-crime areas was more difficult, more dangerous, and more degrading. *Id.* And it credited the EEOC's "statistical analysis to support the conclusion that [the company] disproportionately assigned drivers to such routes." *Id.* at 800. Therefore, the court found "triable issues of fact regarding whether Black drivers were subject to an adverse employment action." *Id.* at 801.

As Defendants point out, the *DHL Express* court made its decision on a motion for summary judgment and did not directly analyze intent. But it is important that the *DHL Express* court applied Plaintiffs' proposed framing of the issues rather than Defendants'. In other words, the

8

court viewed the adverse employment action as the company's job assignments themselves rather than any harm that may result from those assignments. The intent relevant to that adverse action is the company's intent to disproportionately assign African American drivers to more dangerous routes.

Under this more appropriate framing, Defendants' cited cases—*Bankhead v. Wintrust Fin. Corp.* and *McReynolds v. Merrill Lynch & Co.*—are inapposite. *See Bankhead v. Wintrust Fin. Corp.*, No. 1:22-CV-02759, 2023 WL 6290548, at *4 (N.D. Ill. Sept. 27, 2023) (Blakey, J.); *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012). In *Bankhead*, the plaintiff alleged that the defendant-lending company gave African American borrowers worse mortgage rates than borrowers of other races. *See Bankhead*, 2023 WL 6290548, at *4. But the plaintiff also alleged that the lending company's policy was race neutral, and the plaintiff failed to allege any racial animus in the company's policy decisions. *Id.* In *McReynolds*, the plaintiff alleged that the defendant knew its "production-credit system" disparately impacted African American employees but did not allege "*the retention program itself* was adopted" with the intent to discriminate against African American employees. 694 F.3d at 885 (emphasis in original).

In contrast to *Bankhead* and *McReynolds*, the thrust of Plaintiffs' claims here is not that Peoples Gas intended disparate outcomes (more African American employees becoming crime victims) through a neutral policy, but that Peoples Gas maintained a policy or practice of intentional race discrimination (disproportionately assigning African American employees to higher-crime areas). Thus, contrary to Defendants' argument, Plaintiffs need only allege that Peoples Gas intended to assign African American employees to less desirable working conditions.

Returning to the controlling standard, Plaintiffs can allege intent quite generally. *See Concentra Health*, 496 F.3d at 781. Plaintiffs' allegations, set forth above, about disproportionate assignment might alone imply intent at this stage. Plaintiffs also allege a statistic to support this

9

theory, noting that of the twenty-two assaults against Peoples Gas employees assigned to these locations in the last several years, twenty-one of the employees were African American. (*Id.* ¶ 31.)

But even if those allegations are not sufficient on their own, Plaintiffs plead numerous additional "suspicious words or actions," *Hossack*, 492 at 862, that support plausible allegations of intent. For instance, Plaintiffs allege that Peoples Gas management justifies its assignments based on "racially biased views where African Americans belong to a more dangerous sector of society," Dkt. 1 ¶ 34; that racial slurs and stereotyping is commonplace among Peoples Gas managers and employees, *id.* ¶¶ 23-28, 120; and that Peoples Gas managers apply stricter disciplinary standards to African American employees than employees of other races for the same conduct, *id.* ¶¶ 40-42.

Taken together, Plaintiffs' allegations describe widespread animus against African American employees paired with a suspicious distribution of negative job assignments. At this stage, such allegations plausibly support intent.

### b. Causation

To succeed on a § 1981 claim, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp.*, 589 U.S. at 341. The Supreme Court has described this familiar but-for test as "direct[ing] [courts] to change one thing at a time and see if the outcome changes. If it does, [the court] ha[s] found a but-for cause." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 656, 140 S. Ct. 1731, 1739, 207 L. Ed. 2d 218 (2020). Defendants argue that Plaintiffs fail to plead but-for causation because "the random assaults and robberies were not caused by Peoples Gas; they were committed and caused by third-party criminals while its employees were working in the neighborhoods of Chicago." (Dkt. 20 at 9.)

Plaintiffs argue that Defendants "analyze the wrong question." The Court agrees. As described in the above discussion of intent, Defendants again wrongly construe the adverse employment action as the alleged crimes committed against Plaintiffs rather than their assignment to

higher crime areas. As Plaintiffs put it, the issue is whether they "plausibly alleged 'but for race' they would not have been sent to dangerous areas at a rate disproportionately higher than their non-Black peers and without adequate security." (Dkt. 29 at 14.) Plaintiffs allege that (1) Peoples Gas's practice is to assign African American employees to more dangerous areas, (2) they are African American and were assigned to a more dangerous area, and (3) therefore, Peoples Gas assigned them to a more dangerous area because of their race. (*See* Dkt. 1 ¶¶ 29-35.) That is enough at this point to support causation.

Nonetheless, Defendants warn that:

> to allow Plaintiffs to maintain their intentional race discrimination claim here based merely on their territorial work assignments is to effectively declare that any employer that serves the public on the south or west sides of Chicago and requires field work in those areas has intentionally discriminated against those employees if they should happen to be subjected to the completely random, unpredictable actions of third-party criminals while engaged in their work.

(Dkt. 20 at 10.)

The Court disagrees. First, at this stage, the Court must accept as true that Plaintiffs were assigned to locations with higher crime rates. In discovery, Plaintiffs will have to identify the specific locations at issue and prove that any alleged disparity in crime rate is factually and legally significant enough for assignment to those locations to constitute an adverse employment action. Second, and more importantly, Plaintiffs do not and cannot allege that it is illegal to send employees to certain neighborhoods on the south or west sides of Chicago. They allege instead that it is illegal to send only African American employees to those neighborhoods simply because those employees are African American.

For these reasons, Plaintiffs have sufficiently alleged that Defendants' actions were the but-for cause of their being assigned to locations with high crime rates.

### c. Sufficiency of the Allegations

Defendants also argue that Plaintiffs fail to offer enough "specifics about any of the circumstances surrounding" Peoples Gas's allegedly discriminatory practices and fail to connect each Plaintiff-employee with each adverse action. But that overstates the standard here. "[L]ittle information is required" to put an employer on notice of its employee's discrimination claims. *Carlson*, 758 F.3d at 827; *see also Tamayo*, 526 F.3d at 1084. Plaintiffs' general allegations about "steering," "denial of overtime," disparate discipline practices, and so on, apply to each Plaintiff individually. That is, each Plaintiff asserts that he or she "was subjected to and harmed by Peoples Gas's discriminatory policies and practices described [in the body of the complaint]." (*See* Dkt. 1 ¶¶ 45, 55, 62, 75, 81, 91, 97, 101, 110, 118, 123.)

The body of the complaint, and Plaintiffs' individual claims by reference, contains adequate specificity to put Defendants on notice, including when, where, how, and by whom Plaintiffs were discriminated against. Specifically, the complaint alleges that managers required African American employees to keep strict time while employees of other races were free to clock out early; that supervisors gave African American employees more physically difficult overtime while other employees were given less physical and more desirable labor; and that African American employees were denied overtime at a higher rate than other employees based on supervisors' racist views that "Black people don't want to work." Additionally, Plaintiffs provide rough statistical differences by alleging the percentage of African American employees that were assaulted in the field and noting that they were "disproportionately" given dangerous assignments.

Plaintiffs have fairly put Defendants on notice of their specific discrimination claims and the grounds for each, and have plausibly suggested they have a legal right to relief. *See Tamayo*, 526 F.3d at 1084. That is enough to allege a disparate treatment claim. Plaintiffs are not required at this stage

to reiterate every fact individually in discussing each theory, nor to connect each employee to each supervisor and each specific instance of misconduct in minute detail.

The Court therefore denies Defendants' motion to dismiss Plaintiffs' disparate treatment claims under Counts I, II, and VII.

## 2. Counts I, II, and VII – Disparate Impact

Disparate treatment claims are distinct from disparate impact claims, which involve "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003). Defendants argue that Plaintiffs fail to allege a disparate impact claim.

The Seventh Circuit has held that in "complex disparate-impact cases" it "would expect to see some factual content in the complaint tending to show … a relevant and statistically significant disparity between" employees of different races. *Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014). But the Seventh Circuit has also emphasized the importance of discovery in disparate impact cases, noting that "'basic allegations' regarding the disparity between the racial makeup of [a defendant's] workforce and the surrounding area are sufficient to survive a motion to dismiss." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1007 (7th Cir. 2019).

Defendants rely on the standard articulated in *Adams*, claiming that "Plaintiffs' general allegations fail to identify with sufficient facts the details of the specific employment practice at issue," Dkt. 20 at 12; that "Plaintiffs have not adequately alleged that the territory assignment process … causes a relevant and statistical disparity between Black and non-Black employees becoming victims of crime," *id.* at 13; and that Plaintiffs have not adequately alleged which overtime, promotion, and discipline policies are at issue and whether the policies have "caused a relevant and statistically significant disparity between Black and non-Black employees," *id.* at 16. It must be

noted, however, that the alleged policy in *Adams* was far more complex than the policies and practices at issue here. "The challenged process [in *Adams*] involved combining several test scores, an interview, and a personnel file evaluation for each candidate into a composite score and ranking each candidate according to those scores, while also allowing for a degree of discretion in promotion decisions." *Chaidez*, 937 F.3d at 1007 n.5.

Plaintiffs' claims here are far simpler. They allege that (1) Peoples Gas supervisors and managers assign African American employees to more dangerous neighborhoods, which is illustrated by the disproportionate number of African American employees working in those neighborhoods and becoming victims of crime; (2) Peoples Gas "gives nonblack employees study materials" for promotion exams while "springing these exams on African American employees;" (3) "Peoples Gas openly acknowledges the role of race in assigning overtime" and denies African American employees substantial overtime work, resulting in a concrete wage gap; and (4) Peoples Gas scrutinizes African American employees' time clocks while giving employees of other races "free reign to clock out early without fear of discipline," resulting in unwarranted and differential discipline against African American employees.

Each of these claims is much closer to the "basic allegations" in *Chaidez*, 937 F.3d at 1007. In each instance, Plaintiffs allege that the plain application of an identified policy or practice disproportionately affects African American employees with no business justification (other than racial animus). Defendants "may present contrary evidence at the summary judgment stage or at trial to show there is no suspect racial disparity, and [Plaintiffs], for their part, will need to utilize the discovery process to support their allegations with statistical and comparative evidence." *Id.* at 1007. But Plaintiffs have alleged enough for their disparate impact claims to survive Defendants' motion to dismiss.

14

### 3. Count I – Statute of Limitations for Eleby, Nunn, and Towns

Section 1981 claims "premised on conduct which took place after the formation of [an] employment contract" are subject to a four-year statute of limitations. *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 269 (7th Cir. 2004). In contrast, "if a Section 1981 claim involves the making or enforcement of contracts … the state statute of limitations applies (which, in Illinois, is two years)." *Porter v. Pipefitters Ass'n Loc. Union 597, U.A.*, No. 12-CV-9844, 2013 WL 5162206, at *4 (N.D. Ill. Sept. 12, 2013) (Darrah, J.). Defendants argue that, even if the longer four-year statute of limitations period applies in this case, Plaintiffs Eleby, Nunn, and Towns's § 1981 claims are time-barred because each Plaintiff was assigned to their work location when they joined Peoples Gas more than four years before filing their complaint.

Plaintiffs respond that their claims are "ongoing" and thus timely. Another court in this district has allowed similar claims to proceed on a similar theory, holding that § 1981 claims were not time-barred even though the plaintiffs' initial territory assignments occurred more than four years prior to filing their lawsuit because they "allege[d] that they were denied favorable [assignments] throughout their" tenure with the defendant. *Williams v. State Farm Mut. Auto. Ins. Co.*, 609 F. Supp. 3d 662, 687 (N.D. Ill. 2022) (Valderrama, J.).

Defendants reply that the complaint only alleges Peoples Gas employees are assigned territory once, and that their claims are therefore not ongoing. But Defendants' reading of the complaint fails to make inferences in Plaintiffs' favor.

Ultimately, the facts about the assignment process are not developed enough to rule that Plaintiffs have pled themselves out of court by alleging time-barred claims. *See Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6).") (citing *Walker v. Thompson*, 288 F.3d

15

1005 (7th Cir. 2002)).  The Court therefore rejects Defendants' argument, at this stage, that Plaintiffs

Eleby, Nunn, and Towns's claims are time-barred.

For these reasons, Count I may proceed for all Plaintiffs.

### 4. Counts II, IV, and VII – Woods's Claims

Defendants also target Plaintiff Woods's individual claims under Counts II (Title VII

discrimination), IV (ADA discrimination), and VII (IHRA discrimination).  Defendants first argue

that some of Woods's claims—those "discrete employment actions occurring before May 20, 2021,"

Dkt. 20 at 22—are time-barred.  Second, Defendants argue that Woods failed to exhaust his

administrative remedies under the IHRA.  The Court addresses each argument in turn.

#### a. Statute-of-Limitations

Defendants' statute-of-limitations argument is inappropriate at this stage.  Defendants

impermissibly attempt a "piecemeal dismissal[ ] of *parts* of claims" that is not permitted under Rule

12(b)(6).  *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015).  Defendants do not move to

dismiss all of Counts II, IV, and VII as to Woods, but rather "some" of his claims "based on

discrete employment actions occurring before May 20, 2021."  (Dkt. 20 at 22.)  This kind of

attempted winnowing is better saved for summary judgment.  *See BBL, Inc.*, 809 F.3d at 325.  The

Court therefore denies this aspect of Defendants' motion.

#### b. Failure-to-Exhaust

Defendants' argument that Plaintiffs' IHRA claim should be dismissed is better supported

by the case law.  The IHRA's exhaustion requirement is jurisdictional.  *See Garcia v. Vill. of Mount

Prospect*, 360 F.3d 630, 640 (7th Cir. 2004) ("[T]he Act also limits the jurisdiction of Illinois courts,

mandating that any party seeking to pursue a civil-rights claim in Illinois must first exhaust

administrative remedies available under the Act …."); *Hankins v. Best Buy Co.*, No. 10 CV 4508, 2011

WL 6016233, at *5 (N.D. Ill. Dec. 2, 2011) (Lefkow, J.) ("The IHRA limits the court's jurisdiction to

claims that have first been raised through the administrative procedures set forth in the statute.") (citations omitted). Defendants argue that Woods has "failed to plead any facts demonstrating that he complied with the IHRA's exhaustion requirements." (Dkt. 20 at 23.)

In response, Plaintiffs do not point to any allegations that Woods complied with the IHRA's exhaustion requirements but argue only that "exhaustion … is an affirmative defense that need not be pleaded." (Dkt. 29 at 24.) But that ignores the jurisdictional nature of the issue and the numerous courts in this district that have found that "failure to comply with [the IHRA's] exhaustion requirements warrants dismissal of" a plaintiff's claims. *Bakhtiari v. Doe*, No. 22 C 2406, 2023 WL 415548, at *4 (N.D. Ill. Jan. 25, 2023) (Ellis, J.) (collecting cases). Because Plaintiffs have identified no allegations suggesting that Woods exhausted his administrative remedies under the IHRA, the Court grants this portion of Defendants' motion to dismiss.

In summary, the Court grants Defendants' motion to dismiss Count VII as to Plaintiff Woods only and dismisses Count VII without prejudice to refiling if Plaintiff Woods can cure the deficiencies identified here. Woods's remaining individual claims may proceed.

### 5. Count X – Preemption of IIED Claims

Defendants argue that the IHRA, 775 ILCS 5/8-111(C), preempts Plaintiffs' IIED claims in Count X. To succeed on an IIED claim, a plaintiff must show "'(1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress, and (3) the defendant's conduct did cause severe emotional distress.'" *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006) (quoting *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997)). IIED claims may be preempted by the IHRA when discrimination is "the core of [the plaintiff's] theory." *Smith v. Chicago Sch. Reform Bd.*, 165 F.3d 1142, 1151 (7th Cir. 1999). But not every IIED claim is preempted by the IHRA. Preemption in these circumstances turns on the legal duty at issue;

"that is, if the conduct would be actionable even aside from its character as a civil rights violation because the IHRA did not furnish[ ] the legal duty that the defendant was alleged to have breached, the IHRA does not preempt a state law claim seeking recovery for it." *Naeem*, 444 F.3d at 604 (quoting *Krocka v. City of Chicago*, 203 F.3d 507, 516–17 (7th Cir. 2000)) (internal quotation marks removed).

Plaintiffs first argue that IHRA preemption is an affirmative defense that they need not plead around. That is true, but Plaintiffs can plead themselves out of court if they allege all ingredients of that defense, *Xechem, Inc.*, 372 F.3d at 901, and this Court has dismissed IIED claims in the past for this very reason. *See, e.g.*, *Van v. Ford Motor Co.*, No. 14 CV 8708, 2016 WL 1182001, at *7 (N.D. Ill. Mar. 28, 2016) (Coleman, J.). The key issue here is whether Plaintiffs have alleged conduct that would be actionable even aside from the legal duty imposed by the IHRA. *See Naeem*, 444 F.3d at 604.

The Court finds that the conduct at issue, at least as alleged and argued, would not be independently actionable. Plaintiffs contend that "[a]n employer intentionally sending employees to dangerous areas without security, causing their assaults, often at gunpoint, is actionable as a tort regardless of any intent to discriminate." (Dkt. 29 at 25.) But those claims only arise in the employment context. Defendants could not send Plaintiffs anywhere were it not for their employment relationship. And as explained above, Plaintiffs' claims are actionable not because they were sent to allegedly higher-crime areas, but because they were sent to higher-crime areas *because they are African American*. The legal duty at issue—the duty not to discriminate—is imposed by the IHRA.

The Court therefore grants Defendants' motion to dismiss as to Count X. [3]

---

[3] Defendants also argue that Count X is preempted by the Illinois Workers Compensation Act ("IWCA"). But because the Court dismisses Count X based on IHRA preemption, the Court need not address Defendants IWCA argument at this time.

18

### 6. Allegations Against WEC

Defendants argue that no allegations in Plaintiffs' complaint plausibly allege any wrongdoing by WEC. They note that Plaintiffs occasionally improperly describe "Defendants" together when referring to Peoples Gas, but otherwise make only one allegation against WEC; that "WEC oversees and supports Peoples Gas, including in Human Resources, and formulates corporate policies governing Peoples Gas employees." (Dkt. 1 ¶ 10.)

Plaintiffs respond by disavowing vicarious liability and arguing that WEC is liable for its own conduct. Plaintiffs argue that WEC (1) directed discriminatory conduct or policies; (2) was Plaintiffs *de facto* employer because it controlled Peoples Gas's discriminatory acts; and (3) can be held liable as Peoples Gas's human resources "agent." But Plaintiffs do not point to any allegations that could support these theories. Indeed, aside from the single allegation that Defendants cite, Plaintiffs identify only one more—that WEC maintained an "ethics hotline" through which Plaintiff Towns filed a complaint.

Neither of these allegations, even viewed in Plaintiffs' favor, support a claim of discrimination against WEC. The Court is unable to draw an inference that WEC is liable for any misconduct. *See Iqbal*, 556 U.S. at 678. Plaintiffs do not allege which policies WEC "formulates," nor how WEC "oversees and supports Peoples Gas." Moreover, Plaintiffs do not allege what authority WEC had to address complaints through its "ethics hotline," nor how it discriminated against Plaintiff Towns after he called the hotline.

Plaintiffs' complaint therefore fails to state a claim against WEC, and the Court grants this portion of Defendants' motion.

## CONCLUSION

For these reasons, the Court grants in part and denies in part Defendants' Joint Partial Motion to Dismiss [18] and grants WEC's Motion to Dismiss [19] in its entirety. The Court grants

Defendants' Joint Partial Motion to Dismiss as to Count X regarding all Plaintiffs and Count VII regarding Woods only. The Court denies the remainder of Defendants' Joint Partial Motion to Dismiss. All other claims may proceed against Peoples Gas. All dismissals ordered in this opinion are without prejudice. Plaintiffs are granted leave to amend their complaint within 30 days if they believe in good faith that they can cure the deficiencies identified in this opinion.

**IT IS SO ORDERED.**

Date: 10/28/2024

Entered:

SHARON JOHNSON COLEMAN
United States District Judge